# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| JOHN C. PETREIKIS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Cause No.: 2:13-CV-298-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff John C. Petreikis on August 28, 2013, and a Social Security Opening Brief of Plaintiff [DE 22], filed on March 7, 2014. The Commissioner filed a response on May 29, 2014, and Plaintiff filed a reply on June 23, 2014. Plaintiff challenges the Social Security Administration's determination that he is not disabled under the Social Security Act.

## I. Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) with the Social Security Administration on November 19, 2012, alleging that he had been disabled since May 12, 2010, because of neck and spine injuries as well as depression and problems remembering and concentrating. His application was denied initially and upon reconsideration.

He then filed a request for a hearing before an Administrative Law Judge (ALJ), which took place on April 23, 2012, in Valparaiso, Indiana, before ALJ Edward P. Studzinski. The ALJ heard testimony from Plaintiff as well as from vocational expert (VE) Dr. Leonard Fisher. Plaintiff appeared for the hearing by video-conference and was represented by attorney Barbara Rodecki.

On July 18, 2012, the ALJ issued a written decision denying Plaintiff's claims for disability

benefits, making the following findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since May 12, 2010, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant requires the option to alternate between sitting and standing; after sitting for 60 minutes the claimant must be allowed to stand for 5 minutes before sitting for another 60 minutes. The claimant would not need to abandon the workstation or lose concentration on work tasks while alternating positions. In addition, the claimant must never climb ladders, ropes, or scaffolds but can occasionally climb ramps, or stairs. The claimant can occasionally balance, kneel, stoop, crouch or crawl. The claimant can perform no more than occasional bilateral overhead reaching. The claimant requires jobs that allow use of a cane for walking on uneven terrain or for prolonged periods of ambulation. The claimant must avoid concentrated exposure to wetness or humidity that would result in slippery surfaces. The claimant is to have no exposure to hazardous environments such as unprotected heights, exposed flames, or unguarded large bodies of water, and no concentrated exposure to unguarded hazardous machinery. The claimant is to do no driving or operating moving machinery as part of his job tasks. In addition, the claimant is limited to simple routine repetitive tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in 1970 and was 40 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2010, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On August 28, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

4

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

5

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)–(v), 416.920(a)(4)(I)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff marshals five arguments for why the ALJ's decision should be remanded for further consideration or reversed outright. He contends (1) that the ALJ's credibility analysis had several errors; (2) that the ALJ failed to properly weigh the opinion evidence; (3) that the ALJ improperly

6

assessed evidence of Plaintiff's anxiety in finding it to be non-severe; (4) that the ALJ's listing analysis regarding effective ambulation was in error; and (5) that the ALJ failed to reconcile his findings concerning stooping with evidence of limited lumbar spine flexion. The Court considers each argument in turn.

### A. Credibility

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). But a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996). The ALJ is "in the best position to determine a witness's truthfulness and forthrightness," and "this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)) (internal quotation marks omitted); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). And this Court is not bound by the finding if it "is based on errors of fact or logic." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (citations omitted).

The ALJ said that Plaintiff's report that he could not do any physical work was undermined by a statement that the only activity he enjoyed was volunteering as an amateur radio operator and storm spotter. But it is not clear from the ALJ's opinion what physical work, if any, would be involved in this hobby. The ALJ should have explained himself.

7

The ALJ also said that Plaintiff might not have accurately or consistently reported his pain complaints. The ALJ pointed to a report by Dr. Valek, in which Plaintiff said that Dr. Chang had advised him to continue with pain management and had no surgery planned. The ALJ noted that there was no record of Plaintiff participating in pain management and stated that when Plaintiff told his chiropractor that he wanted to continue with him for pain management, the chiropractor corrected Plaintiff, stating that his treatment was not pain management. The ALJ's summary was inaccurate: the chiropractor didn't say that what he did was "not pain management," but said that "we are not the best option for pain management and that [Plaintiff] should seek out a pain management clinic." (AR 393). Plaintiff's statement regarding pain management is thus not an inconsistency, and the ALJ shouldn't have held this against him. *See Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996) (evaluating a similar situation).

The ALJ also erred in finding that Plaintiff had made inconsistent statements regarding side effects from his medication. The ALJ pointed to a record in which Plaintiff stated to his medication management team that he did not have side effects, contrasting this with Plaintiff's hearing testimony that he had significant difficulties with concentration caused by his pain medication. The apparent inconsistency again stems from a misreading of the record. The report of the pain management team refers only to Plaintiff's prescriptions for Xanax and Ambien, his mental health drugs. Plaintiff's complaints of confusion are related, not to those drugs, but to side effects from the narcotics he was taking for his pain. This was an error.

The Commissioner does not respond to Plaintiff's specific arguments, but instead contends that the ALJ properly considered the evidence and gave numerous valid reasons for why he did not find Plaintiff fully credible, stating that Plaintiff's objection is merely to how the ALJ weighed the

evidence. Her argument, though she doesn't put it this way, is that any error is harmless because the ALJ's decision regarding credibility was supported by substantial evidence. As the Commissioner points out, there are a number of factors the ALJ found undermined Plaintiff's credibility that Plaintiff does not object to.

But a finding of harmless error is only appropriate when "a contrary determination would have to be set aside as incredible or when the trier of fact says that he would have made the same determination even if the questioned circumstances had been different from what he thought them to be and he gives an adequate reason for that back-up position." *Allord*, 455 F.3d at 821; *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) As in *Allord*, the ALJ here did not say that the same determination would have been made absent the erroneous determinations. *Allord*, 455 F.3d at 821. And a finding of harmless error would thus only be appropriate if "a contrary determination would have to be set aside as incredible." *Id.* Though this is a close call, there are enough factual and logical errors in the ALJ's credibility analysis that a finding by this Court that he would have reached the same conclusion even without these errors would be speculative. *Id.* Remand is thus required. *Id.*; *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms.").

In addition to rectifying the errors discussed above, discussion of Plaintiff's activities of daily living should also include discussion of the limitations on those activities. The ALJ should also discuss Plaintiff's work history in crafting the credibility assessment. *See Suess v. Colvin*, 945 F. Supp. 2d 920, 931 (N.D. Ill. 2013). Finally, the ALJ should discuss whether more aggressive treatment (especially epidural injections) would in fact be helpful to Plaintiff's condition and

9

whether low-cost treatment options aside from narcotics in fact existed.

## B. Opinion Evidence

The ALJ considered evidence from a number of different medical sources in crafting the RFC determination. He gave the greatest amount of weight to state agency reviewing sources, but also gave some weight to Plaintiff's treating physicians and other treating sources. Plaintiff argues that there are a number of flaws in the ALJ's decision on this point.

To begin with, Plaintiff contends that the ALJ did not follow the applicable regulations in considering the weight given to Plaintiff's treating sources. The social security administration's so-called treating physician's rule provides that if a treating physician's opinion is consistent with the rest of the record, it must be given controlling weight. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). But if—as here—it isn't consistent with the rest of the record, the ALJ must consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R § 404.1527; *Bauer v. Astrue*, 532 F.3d at 608; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). The Agency directs ALJs to use the same factors in evaluating medical evidence from a treating source that is not "an acceptable medical source," such as a nurse practitioner or a physician's assistant. SSR 06-03P, WL 2329949, at *4–*5 (Aug. 9, 2006).

The ALJ's decision makes reference to these factors. But he did not discuss each of the factors for each of the treating sources. A detailed evaluation of Plaintiff's argument is not necessary, however, since this case is being remanded on other grounds. On remand, the ALJ should state, explicitly, how each of the factors relates to his evaluation of each treating source, including

the records produced by Nurse Ornelas.

Plaintiff also objects that the ALJ should have given less weight to the opinions of the Agency's consulting medical sources because they did not have up-to-date records. Plaintiff points out that the mental health consultants working for the Agency did not have the benefit of months' worth of records produced by Nurse Ornelas and, likewise, that the reviewing physicians did not have the benefit of a number of records created after they completed their reviews. Fresh record reviews will give the ALJ the most complete opinion evidence, and the Court accordingly directs the Agency to procure new record reviews prior to Plaintiff's hearing on remand.

The ALJ also found some of the treating physicians' opinions internally inconsistent because they stated, on the one hand, that Plaintiff had reached maximum medical improvement and, on other hand, continued to recommend that Plaintiff undergo injections and other treatment. While this might well be an inconsistency, discussion of any internal inconsistencies in the treating physicians' opinions on remand should also include consideration of a second possibility: whether injections or other recommended treatment might have been required for Plaintiff to *maintain* his level of function.

Plaintiff also objects that the ALJ didn't adequately explain why he thought Plaintiff's treating physicians might have been sympathetic. This statement, however, comes at the end of the ALJ's discussion of this issue and is admittedly speculative. It does not appear to be doing any analytical work, and including it was not an error.

The ALJ also said that good portions of the treating physicians' opinions were based on Plaintiff's subjective complaints, which he found to be not credible. Discussion of this on remand should be reconsidered insofar as the ALJ modifies his credibility assessment. Further, the ALJ

should also explain why the evidence he cited in support of his RFC did not also support the more restrictive opinions of Plaintiff's treating sources. And, as mentioned above, further explanation of the limitations on Plaintiff's daily activities is also warranted.

### C. Effective Ambulation

Plaintiff also objects to the ALJ's determination that Plaintiff's impairments did not meet a listed impairment. Specifically, Plaintiff contends that the ALJ's discussion of Plaintiff's ability to ambulate effectively was deficient. *See* 20 C.F.R. pt 404P, app. 1 § 1.00(B)(2)(b)(2).

In reaching his decision, the ALJ found that Plaintiff could walk "for 100 feet up to 1 city block" and that Plaintiff could climb a few stairs. (AR 60). The ALJ did not state whether Plaintiff could do these things at a reasonable pace.

On remand the ALJ should also clarify whether Plaintiff's climbing and walking could be done at a reasonable pace. Moreover, the listing analysis should include discussion of Plaintiff's limitations in his handling of routine activities such as shopping. *See Moss v. Astrue*, 555 F.3d 556, 562–63 (7th Cir. 2009).

### D. Anxiety

The ALJ found that Plaintiff's anxiety was medically determinable but non-severe. Plaintiff argues that this determination was an error and that the ALJ's discussion of the issue was deficient. To begin with, Plaintiff objects that a finding of non-severity is disfavored and should only be used when a claim is truly groundless and further discussion of work experience or the claimant's RFC is a waste of time. This is true. *See, e.g.*, *McCullough v. Heckler*, 583 F. Supp. 934, 938 (N.D. Ill. 1984). But it is irrelevant here because the ALJ did not stop his analysis at Step Two, but continued through Step Five and considered mental limitations in his RFC.

12

Plaintiff also objects that the ALJ did not give sufficient credence to the medical evidence that Plaintiff was extremely limited in his ability to sustain normal mental function and was in a continual state of decompensation with a global assessment of functioning of 50. The lack of discussion doubtless stems in part from the low weight given to Nurse Ornelas's opinions regarding Plaintiff's mental health. This might change on remand, since, as mentioned above, the Court has directed the agency to procure a review of Plaintiff's up-to-date mental health records, including those produced by Nurse Ornelas. There might, of course, be no change, and this Court is in no position to speculate what the reviewing sources (or, for that matter, the ALJ) might conclude. Regardless, the ALJ should include discussion of Ornelas's specific findings and flesh out in greater detail how Plaintiff's activities support (or not) the ultimate decision regarding Plaintiff's anxiety.

### E. Limited Flexion

Plaintiff contends that the ALJ failed to resolve the inconsistency between a consultative examination finding that Plaintiff had only fifteen degrees of lumbar flexion and his conclusion in the RFC that Plaintiff had the ability to stoop for up to one-third of the work day. The Commissioner did not respond to this argument. If this discrepancy persists on remand, the ALJ should resolve it. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

### F. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord*, 631 F.3d at 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356)). As is evident from the discussion above, remand, not an immediate award of benefits, is required.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in the Social Security Opening Brief of Plaintiff [DE 23], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 6th day of January, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record